Mark R. Gaylord (#5073)
Melanie J. Vartabedian (#10148)
Scott S. Humphreys (*admitted pro hac vice*)
BALLARD SPAHR LLP
One Utah Center, Suite 800
201 South Main Street
Salt Lake City, Utah 84111-2221
Telephone:  (801) 531-3000
Facsimile:  (801) 531-3001
gaylord@ballardspahr.com
vartabedianm@ballardspahr.com
humphreys@ballardspahr.com

Attorneys for Court-Appointed Receiver,
Diane A. Thompson

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiff,**<br><br>v.<br><br>**AMERICAN PENSION SERVICES, INC.,** a Utah Corporation and **CURTIS L. DeYOUNG,** an individual,<br><br>**Defendants.** | **RECEIVER'S OPPOSITION TO MOTION TO INTERVENE BY KIM R. WILSON**<br><br>Case No.:  2:14-CV-00309-RJS-DBP<br><br>Judge Robert J. Shelby<br>Magistrate Judge Dustin B. Pead |

Diane Thompson, Court-appointed Receiver of American Pension Services, Inc. (Receiver), by and through her counsel of record, hereby opposes the Motion to Intervene by Kim R. Wilson and Memorandum in Support [Docket 251] (Motion or Motion to Intervene).

## INTRODUCTION

The Motion to Intervene should be denied for two reasons.  First, the Motion to Intervene is not accompanied by a pleading as required by Fed. R. Civ. P. 24(c).  Second, the Motion does not meet the requirements for intervention as a matter of right under Fed. R. Civ. P. 24(a)(2).[1]

This case has been pending for six months.  Since her appointment, the Receiver has worked to marshal, preserve, and secure the assets of American Pension Services, Inc. (APS) and Mr. Curtis L. DeYoung (DeYoung) (collectively Receivership Defendants) as well as any other entities attributable to the Receivership Defendants.  (Order Appointing Receiver, Freezing Assets, and Other Relief, at 1–2 (Receivership Order) [Docket 9]).  Pursuant to the Receivership Order, the Receiver has continued to operate APS to allow clients to continue to direct the investments of their self-directed individual retirement accounts (IRAs) and 401(k) plans in an effort to minimize harm to the clients.  (Receivership Order ¶ 5).  Also pursuant to the Receivership Order, the Receiver filed a Proposed Plan of Liquidation on August 22, 2014.  (*See* Receivership Order ¶ 56; Proposed Plan of Liquidation [Docket 186] (Proposed Plan or Plan)).  The Receiver is in the process of revising the Proposed Plan for submission to the Court by November 21, 2014.  (Order Setting Deadlines Pertaining to Receiver's Proposed Plan of Liquidation ¶ 3 [Docket 221] (Order Setting Deadlines)).  Intervention by private litigants like Kim R. Wilson is inappropriate and will further disrupt the Receiver's performance of her duties as an officer of the Court.  Accordingly, the Motion to Intervene should be denied.

---

[1] The Motion to Intervene does not seek permissive intervention.  Had Mr. Wilson requested permissive intervention, that motion should also be denied.

**STATEMENT OF FACTS**

1.  On April 24, 2014, the Court entered the Receivership Order, which appointed Diane Thompson as Receiver of APS and the Receivership Defendants. (Receivership Order ¶ 2).

2.  On May 21, 2014, the Court issued an Order Clarifying Order Appointing Receiver, Freezing Assets, and Other Relief [Docket 79] (Clarifying Order). The Receivership Order and later Clarifying Order do not permit the Receiver to authorize withdrawals of funds from APS accounts other than ongoing periodic distribution payments to preserve assets, the payment of regular monthly, quarterly, semi-annual, or annual distributions scheduled prior to the Receivership, or the payment of required minimum distributions to clients over 70.5 years of age. (Receivership Order ¶ 3; Clarifying Order, at 2-3).

3.  The Clarifying Order also instructs the Receiver to allow the liquidation of investments and reinvestments into other assets by APS clients within their accounts and the investment of existing cash by APS clients into other investments of hard assets within their accounts, so long as the assets continue to remain frozen pursuant to the terms of the Receivership Order. (Clarifying Order, at 2–3).

4.  All litigation against the Receiver or otherwise involving the Receiver's exercise of her discretion is prohibited during the pendency of the Receivership. (Receivership Order ¶¶ 36–38).

5.  Pursuant to the Receivership Order, the Receiver developed and filed a Plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and

recoverable assets of the Receivership Defendants. (Receivership Order ¶ 56). The Receiver filed her Plan on August 22, 2014. (*See generally* Proposed Plan).

6. The Receiver provided notice of the plan to APS clients and creditors by first class mail and e-mail on September 19, 2014. (Order Setting Deadlines ¶ 1). The Receiver also posted a copy of the notice sent to APS clients on the Receivership website at www.apsreceiver.com.

7. The Receiver solicited comments, suggestions, and objections regarding the Plan from APS clients and creditors. Pursuant to Court Order, APS customers and clients (including Mr. Wilson) were to submit their comments, suggestions, and objections to the Receiver in writing by October 20, 2014. (Order Setting Deadlines ¶ 2).

8. Instead of submitting his response to the Receiver as ordered by the Court, Mr. Wilson, who is a licensed attorney, submitted a response to the Receiver's Proposed Plan of Liquidation on October 20, 2014 by electronically filing his response with the Court. (Kim Wilson's Response and Objection to the Receiver's Proposed Plan of Liquidation [Docket 250]).

9. On the same day, October 20, 2014, Mr. Wilson filed his Motion to Intervene. (Motion to Intervene and Memorandum in Support [Docket 251]).

10. The Receiver is in the process of considering revisions to the Proposed Plan based on the comments, suggestions, and objections received from APS clients and creditors. The Receiver will submit a revised Plan to the Court by November 21, 2014, with a hearing on the revised Plan scheduled for December 2, 2014. (Order Setting Deadlines ¶¶ 4–5).

11. Mr. Wilson and his deceased wife, Vicky S. Wilson, opened their accounts with APS on or about June 29, 1987. Mr. and Mrs. Wilson originally funded their APS accounts

through a cash rollover from Merrill Lynch and then directed APS to purchase a single asset using the cash deposited into the master trust account.

12. Upon the death of Mrs. Vicky S. Wilson, Mr. Wilson succeeded to the interests of Mrs. Wilson's IRA and assets of Mrs. Wilson's IRA became part of the holdings of Mr. Wilson's IRA.  (Motion to Intervene ¶ 3 [Docket 251]).

## ARGUMENT

Mr. Wilson's Motion to Intervene should be denied because the Motion is not accompanied by a pleading as required by Fed. R. Civ. P. 24(c), the Motion does not meet the requirements for intervention as a matter of right under Fed. R. Civ. P. 24(a)(2), and the Motion is an end run around this Court's Order Setting Deadlines.[2]

### I.   THE MOTION TO INTERVENE IS NOT ACCOMPANIED BY A PLEADING AS REQUIRED BY FED. R. CIV. P. 24(c)

Rule 24(c) of the Federal Rules of Civil Procedure requires a motion to intervene "state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought."  Rule 7(a) of the Federal Rules of Civil Procedure dictates that "[o]nly these pleadings are allowed:  (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) . . . a reply to an answer."  The requirement of a pleading is generally construed liberally, *see* 7A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1914 & n.10 (collecting cases); however, when an

---

[2] As noted previously, the Motion to Intervene does not seek permissive intervention.  Had Mr. Wilson requested permissive intervention, that motion should also be denied.

-
-

applicant for intervention "never file[s] a pleading, nor endeavor[s] to adopt" a pleading of an existing party, the motion to intervene should be denied.  *FTC v. Med Resorts Int'l, Inc.*, 199 F.R.D. 601, 606 (N.D. Ill. 2001).

Mr. Wilson did not file a pleading with his Motion to Intervene, nor did he endeavor to adopt any existing pleading as defined by Fed. R. Civ. P. 7(a).  Therefore, Mr. Wilson's Motion to Intervene should be denied.

## II. THE MOTION TO INTERVENE FAILS TO MEET THE REQUIREMENTS FOR INTERVENTION UNDER FED. R. CIV. P. 24(a)(2)

Mr. Wilson's Motion to Intervene should be denied because it fails to satisfy the requirements for intervention under Fed. R. Civ. P. 24(a)(2).  Rule 24(a)(2) sets forth four requirements for intervention:

> (1) the application is timely, (2) the applicant claims an interest relating to the property or transaction which is the subject of the action, (3) the applicant's interest may be impaired or impeded, and (4) the applicant's interest is not adequately represented by existing parties.

*Elliot Indus. Ltd. P'Ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1103 (10th Cir. 2005).  "Failure to satisfy even one of these requirements is sufficient to warrant denial of a motion to intervene as a matter of right."  *Commodity Futures Trading Comm'n v. Heritage Capital Advisory Servs., Ltd.*, 736 F.2d 384, 386 (7th Cir. 1984) (citing *NAACP v. New York*, 413 U.S. 345, 369 (1973)).

### A. Mr. Wilson's Interests are Neither Impaired Nor Impeded by the Receivership

Rule 24(a)(2) requires a party seeking intervention "to demonstrate that the disposition of this action may as a practical matter impair or impede their ability to protect their interest."  *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1253 (10th Cir. 2001); *SEC v. Kings Real Estate Inv. Trust*, 222 F.R.D. 660, 667–68 (D. Kan.).  In order to satisfy this test, the party seeking

intervention must show that "impairment of its substantial interest is possible if intervention is denied." *Utah Ass'n of Counties*, 255 F.3d at 1253 (internal quotation marks omitted).  In a receivership, "a general creditor will not ordinarily be allowed to intervene in the receivership case when as appears on the face of his petition, his rights are fully protected by filing his claim." RALPH EWING CLARK, A TREATISE ON THE LAW AND PRACTICE OF RECEIVERS § 541(a) (3d ed. 1959).  Adequate protection of interests exists when a receiver develops claims procedures as part of a distribution plan and those claims procedures allow clients, investors, or creditors to present their claims, including arguments for deviation from the plan or procedures to a receiver. *See Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 725 F.2d 584, 587 (10th Cir. 1984); *Kings Real Estate Inv. Trust*, 222 F.R.D. at 668.

In *Chilcott Portfolio Mgmt., Inc.*, the Tenth Circuit Court of Appeals affirmed a district court's decision to deny an investor's attempt to intervene.  725 F.2d at 587.  A receiver was appointed to take control of the assets of a commodity pool operator with approximately 400 investors.  *Id.* at 585.  A complaint was filed by the Commodity Futures Trading Commission alleging a number of violations, including fraud, deceit, and the failure to make appropriate disclosures to investors.  *Id.*  The district court appointed a receiver to "take immediate control of the all assets of the defendants," "marshal[] the assets of the defendants, [and] set[] up claims procedures, with the intent to eventually distribute any assets to the defendants' creditors and investors."  *Id.*  An investor filed a petition to intervene, which was denied by the district court. *Id.* at 586.  In affirming the district court's decision, the Tenth Circuit explained that when a court appoints a receiver to collect, administer and distribute property, it will make "an order directing creditors to present their claims to the receiver."  *Id.*  These "claims procedures set up

by the Receiver will permit [an investor or client] to protect his claimed interest in the assets presently under the control of the Receiver." *Id.* at 587.

In *Kings Real Estate Inv. Trust*, a case similar to the case at bar, the Securities and Exchange Commission (SEC) brought a civil enforcement action against a real estate investment trust alleging fraud.  222 F.R.D. at 661–62.  Funds collected from a number of investors were pooled into one account to finance real estate ventures. *Id.* at 662.  As part of the enforcement action, the district court appointed a receiver and issued an order freezing assets, requiring accounting, and the marshaling of all assets for distribution to creditors and investors of the fund. *Id.*  One investor sought to intervene, arguing his interests would be impeded or impaired without intervention. *Id.* at 667.  In denying the motion to intervene, the district court noted that the order appointing the receiver "direct[ed] the receiver to collect and preserve Receivership Assets," and that "assets may only be distributed to the defrauded investors by the Receiver upon notice and application to the Court." *Id.* at 668.  The district court continued, "once all the Receivership Assets are collected, the Receiver will make an application to the Court to distribute the funds in the manner the Receiver deems just," and at that time, "any investor will be allowed to present their arguments for deviation from the proposed distribution plan." *Id.*  The district court concluded that the claims procedure "would provide . . . sufficient protection by allowing him to assert all his claims . . . at a later date," and thus, the intervenor's interests "will still be adequately protected." *Id.*

In the present case, and pursuant to the Receivership Order, the Receiver has submitted a Proposed Plan that outlines the efficient recovery, liquidation, and distribution of Receivership Assets to APS clients in a manner the Receiver deems just.  (Proposed Plan, at 15–39).  The

Proposed Plan requested a period for allowing parties to submit written responses and objections to the Proposed Plan. (Proposed Plan, at 41, Order Setting Deadlines ¶ 2).

The Receiver acknowledged that the Proposed Plan may require amendment (Proposed Plan, at 41), and is in the process of evaluating the more than 800 responses to determine whether amendments to the Proposed Plan should be made based on client responses. The Receiver will be submitting a detailed response to the multitude of comments, responses and objections on or before November 21, 2014. (Order Setting Deadlines ¶ 4). Pursuant to the Order Setting Deadlines, Mr. Wilson should have filed his Objection to the Proposed Plan with the Receiver, just like every other interested party.[3] Just as in *Chilcott Portfolio Mgmt., Inc.* and *Kings Real Estate Inv. Trust*, any Plan for the distribution of Receivership Assets must be approved by the district court. Any such Plan must also provide a procedure for clients to assert claims or present arguments for deviation from the Plan.

Mr. Wilson has not provided the Receiver or this Court with any evidence of an impairment or impediment to his legal interests. Mr. Wilson's motion is not accompanied by a supporting affidavit or any other evidence indicating that this required element—the impairment of his legal interest—is "easily satisfied in this case." Thus, Mr. Wilson has failed to carry his burden of showing an impairment or impediment of his substantial legal interests.

Furthermore, even if Mr. Wilson has alleged sufficient harm related to his account, he is no different than other APS clients. Mr. Wilson alleges that his account holds only a "single

---

[3] Although the Receiver objects to the manner in which Mr. Wilson filed his response, she has included his response with the other responses that were submitted to the Receiver in the Receiver's submission to the Court on November 4, 2014.

parcel of unimproved real property" and "[a]t no time has APS held any funds which were or could have been the subject of any fraud . . . nor were they vulnerable to loss." (Motion to Intervene ¶¶ 2, 4). First, APS acts as a third-party administrator to approximately 5,500 clients with self-directed retirement accounts. (Second Quarterly Status Report of the Receiver, at 4–5 [Docket 311] (Second Quarterly Report)). Mr. Wilson's situation is no different than a large number of clients who have elected to hold real property in their accounts. (Second Quarterly Report, at 5). Second, Mr. Wilson funded the real property contained in his account with cash from the APS accounts that was rolled over from a Merrill Lynch account. Thus, cash was deposited to Mr. Wilson's APS account, which was subject to fraud and misappropriation. Mr. Wilson, and his wife, also continued to make cash contributions to their accounts for the payment of property related expenses, including property taxes. This cash was subject to fraud and misappropriation. A copy of a journal voucher indicating payment to a title company for the property is attached as Exhibit A. Copies of letters signed by Mr. Wilson indicating cash contributions to his account are attached as Exhibit B. Thus, Mr. Wilson is similarly situated to other APS clients, funding their IRA with cash. Due to the commingling nature of the master trust account and the inability to trace Mr. Wilson's funds, he stands in the same position as many other clients.

     Mr. Wilson has failed to carry his burden of showing an impairment or impediment of his substantial legal interests. The Receiver's Proposed Plan provides adequate procedures for Mr. Wilson to be heard and assert his claims and present any argument for deviation from the Plan. Thus, Mr. Wilson's interests are not impaired by this Receivership and, accordingly, Mr. Wilson's Motion to Intervene should be denied.

### B. Mr. Wilson's Interests Are Adequately Represented by the Receiver

Mr. Wilson also bears the burden of showing his interests are not adequately represented by the existing parties. *Wild Earth Guardians v. United States Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009); *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1254 (10th Cir. 2001). While this burden is described as "minimal," "a petitioner must produce something more than speculation as to the purported inadequacy." *Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979). To determine whether representation is adequate, the court should assess the applicant's ultimate goal. When a party seeking to intervene "has the same ultimate goal as a party already in the suit, courts have applied a presumption of adequate representation." *Id.* To overcome the presumption of adequate representation, the petitioner "must demonstrate adversity of interest, collusion, or nonfeasance." *Id.* Furthermore, "the intervention test is not met when the applicant presents only a difference in strategy" from the existing parties in the litigation.

Mr. Wilson argues simply that "[t]he Receiver obviously is adverse to his interests." (Motion to Intervene, at 3). Mr. Wilson provides no factual support for his argument that the Receiver and the SEC will not protect his interests, but rather makes only a bald assertion speculating that the Receiver is adverse to his interests. Mr. Wilson has not adequately alleged nor demonstrated an adversity of interest between the Receiver, any collusion between the Receiver and defendants in this action, or any nonfeasance on the part of the Receiver.

Furthermore, the Receiver, the SEC, and Mr. Wilson share the same ultimate goal. The ultimate goal of both the Receiver and the SEC is to protect the interests of APS clients, including Mr. Wilson, by marshaling and securing all of the Receivership Assets for ultimate

distribution to clients and creditors, including Mr. Wilson. Mr. Wilson seeks the same ultimate goal, the distribution of his assets—assets that were funded with cash deposits vulnerable to fraud and misappropriation—as the Receiver. Ultimately, Mr. Wilson seeks only a different strategy for the distribution of assets. The Receiver and the SEC believe it best to marshal all assets and develop a plan for the fair, equitable, reasonable, and efficient distribution of those assets, whereas Mr. Wilson seeks an immediate satisfaction for himself. Mr. Wilson's argument could easily be asserted by the approximately 5,500 APS clients, many of whom have demanded release of their funds. However, protecting all of the APS clients requires an appropriate marshaling of all assets and a fair and equitable distribution of those assets under a plan approved by the Court. Until such a plan is approved, Mr. Wilson's assets are safely held by the Receiver.

Mr. Wilson has not shown his interests are not adequately represented by the Receiver. Thus, at this point, Mr. Wilson's motion to intervene should be denied.

## CONCLUSION

Mr. Wilson's Motion to Intervene should be denied because (1) it is not accompanied by a pleading as required by Fed. R. Civ. P. 24(c); and (2) Mr. Wilson has not met the requirements of Fed. R. Civ. P. 24(a)(2) to intervene as a matter of right.

DATED this 6th day of November 2014.

/s/ Melanie J. Vartabedian
Mark R. Gaylord, Esq.
Melanie J. Vartabedian, Esq.
Scott S. Humphreys, Esq. (*admitted pro hac vice*)
BALLARD SPAHR LLP
Attorneys for Court-Appointed Receiver, Diane A. Thompson

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct of copy of the foregoing **RECEIVER'S OPPOSITION TO MOTION TO INTERVENE BY KIM R. WILSON** was served to the following this 6th day of November 2014, in the manner set forth below:

[ X ] Through the CM/ECF System for the U.S. District Court

[ ] Hand Delivery

[ ] U.S. Mail, postage prepaid

[ ] E-mail: ahardenbrook@swlaw.com; docket_slc@swlaw.com; jpollard@swlaw.com; moric@sec.gov; wadleyd@sec.gov; #SLRO-Docket@sec.gov; dleta@swlaw.com; docket_slc@swlaw.com; wsmart@swlaw.com; gbh@pkhlawyers.com; dh@pkhlawyers.com; jt@pkhlawyers.com; john@johnbagleylaw.com; jchandler@djplaw.com; cfrandsen@djplaw.com; judsonpitts@hotmail.com; judson@wimmerpitts.com; krw@scmlaw.com; ec@scmlaw.com; intakeclerk@scmlaw.com; markjgregersen@hotmail.com; feindtp@sec.gov; pmoxley@djplaw.com; cwatters@djplaw.com; tburns@djplaw.com; ajackson@djplaw.com; rpahnke@djplaw.com; utfedcourt@djplaw.com

Daniel J. Wadley, Esq.
Cheryl M. Mori, Esq.
Paul N. Feindt, Esq.
SECURITIES & EXCHANGE COMMISSION
351 S. West Temple, Suite 6.100
Salt Lake City, UT 84101

Paul T. Moxley, Esq.
Thomas J. Burns, Esq.
Z. Ryan Pahnke, Esq.
Joshua D. Chandler, Esq.
DURHAM JONES & PINEGAR
111 East Broadway, Suite 900
Salt Lake City, UT 84111

Judson T. Pitts, Esq.
WIMMER & PITTS, P.C.
11651 S. Harvest Rain Ave.
South Jordan, UT 84095

      George B. Hofmann, IV, Esq.
      PARSONS KINGHORN HARRIS
      111 E. Broadway 11th Fl.
      Salt Lake City, UT 84111

      David E. Leta, Esq.
      Andrew V. Hardenbrook, Esq.
      SNELL & WILMER L.L.P.
      15 West South Temple, Suite 1200
      Salt Lake City, UT 84101

      John P. Bagley, Esq.
      BAGLEY LAW, PC
      308 East 4500 South, Suite 175
      Salt Lake City, UT 84107

      Kim R. Wilson, Esq.
      SNOW, CHRISTENSEN & MARTINEAU
      10 Exchange Place, Eleventh Floor
      Post Office Box 45000
      Salt Lake City, UT 84145-5000

      Mark J. Gregersen, pro se
      10 West Broadway, Suite 505
      Salt Lake City, UT 84101

[ X ] U.S. Mail, postage prepaid to the following:

      Kent A. Jordan
      844 N KING ST UNIT 10
      WILMINGTON, DE 19801


                                        /s/ Lori D. Brown